UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


SUSAN R.,[1]

              Plaintiff,

       v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 3:20-cv-0234-YY

OPINION AND ORDER

YOU, Magistrate Judge:

      Plaintiff Susan R. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-33.  This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).  For the reasons set

forth below, that decision is REVERSED and REMANDED for further proceedings.

      Plaintiff originally filed for DIB on September 20, 2016, alleging disability beginning on

March 8, 2016.  Tr. 176.  Her application was initially denied on February 23, 2017, and upon

reconsideration on November 28, 2017.  Tr. 109, 121.  Plaintiff requested a hearing before an

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last
name.

Administrative Law Judge ("ALJ"), which took place on February 19, 2019. Tr. 29-50. After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Steve Lynch issued a decision on March 21, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 15-23. The Appeals Council denied plaintiff's request for review on January 31, 2020. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 8, 2016, the alleged onset date. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: convergence syndrome, degenerative joint disease of the hip, and myofascial pain syndrome. *Id.* The ALJ recognized another impairment in the record, i.e., osteoarthritis of the hands, but concluded this condition to be non-severe. Tr. 17-18.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 416.967(b), except plaintiff should not climb ladders, ropes, or scaffolds; can frequently stoop, crouch, kneel, and crawl; and should avoid workplace hazards. Tr. 18.

At step four, the ALJ found plaintiff capable of performing past relevant work as a mortgage underwriter and a mortgage auditor. Tr. 23. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly discounting her subjective symptom testimony; (2) erroneously assessing the medical opinion evidence of treating physician Dr. Kelsey Brody, treating optometrist Dr. Alexandra Choban, and state agency psychologist Dr. Donna Wicher; (3) rejecting the lay witness statement from plaintiff's husband; and (4) providing an erroneous RFC.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

Here, the ALJ recounted plaintiff's claims and testimony in detail.  Tr. 18-19.  The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record and other evidence in the record[.]"  Tr. 19.  In particular, the ALJ cited to plaintiff's medical treatment, work history, inconsistent statements, and activities of daily living.

### A.    Objective Medical Evidence

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence.  20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); Social Security Regulation ("SSR") 16-3p, *available at* 2017 WL 5180304, at *7-8 (Oct. 25, 2017).  When coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).  A lack of objective medical evidence may not form the ALJ's sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")).

The ALJ noted plaintiff's testimony "that being on the computer all day was too much for her eyes." Tr. 19.  However, the ALJ observed:

> [T]he consultative examiner found in October 2017 that there was no ocular cause
> for the claimant's vertigo, she had only mild convergence insufficiency on the

exam, and this issue should respond to computer and near glasses with prisms.[2]
Consistent with the consultative examiner's findings, the claimant had an
evaluation in October 2017 with an otolaryngologist, who suspected no otologic
reason for her dizziness.
. . .
Treatment notes in 2018 showed no acute distress, appeared in good health,
comfortable, pleasant affect, good breathing, and did not mention her having
problems functioning at appointments from dizziness, vertigo or visual issues.

Tr. 20 (citing Tr. 871, 962, 972, 998, 1000, 1002, 1004, 1008, 1017, 1022, 1031); *see* Tr. 20

(citing Tr. 831-39); Tr. 21 (citing Tr. 841). The medical records cited by the ALJ support the

ALJ's rational conclusions on the issue.

Plaintiff argues the ALJ did not sufficiently specify what medical evidence was

inconsistent with her testimony. Pl. Br. 9. Although it is not entirely clear what objective

medical evidence the ALJ found conflicted with plaintiff's testimony, the ALJ discussed medical

evidence pertaining to the consultative examiner (Dr. Lubahn) elsewhere in his opinion. Even if

an ALJ explains his decision "with less than ideal clarity," the court must uphold it if the ALJ's

"path may be reasonably discerned," which it can be here. *Molina v. Astrue*, 674 F.3d 1104,

1121 (9th Cir. 2012) (citations omitted).

Plaintiff next contends that her "statements are consistent with the record as a whole and

her impairments are well documented[,]" i.e., "[t]he record reflects that [she] has consistently

*reported* vertigo symptoms associated with eye strain, difficulty with focus, and spasms." Pl. Br

18 (citing Tr. 249, 316-17, 342, 368, 396, 622) (emphasis added). However, "[o]bjective

medical evidence" is "evidence obtained from the application of medically acceptable clinical

---

[2] The Commissioner argues that this fact indicates the "frequency or extent of treatment sought
by the claimant is not comparable with the degree of the individual's complaints[.]" Def. Br. 4
(citing SSR 16-3p, *available at* 2017 WL 5180304, at *9). However, the ALJ does not rely on
this reason. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation
omitted) (holding the court cannot affirm an ALJ's decision on a ground that was not invoked by
the ALJ.).

and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2); *see also Attia v. Astrue*, No. 1:06–cv–00778–SMS, 2007 WL 2802006, at *28 (E.D. Cal. Sept. 24, 2007) ("'Objective medical evidence' refers to any evidence that an examining doctor can discover and substantiate; it is not limited to concrete physiological data, but includes all evidence that is amenable to external testing.") (citing *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987)).  Plaintiff's vertigo symptoms are her own reports to providers and thus not "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques[.]" *Id.*  Otherwise stated, the "document[ation]" of plaintiff's reports of vertigo symptoms is subjective, not objective, medical evidence.

Plaintiff also argues for a different interpretation of the objective medical evidence, i.e., that the ALJ mischaracterized the opinions of Dr. Choban (the consultative examiner) and Dr. Lubahn (the treating optometrist) and that plaintiff's lack of acute distress or complaints of vertigo or vision issues during appointments does not conflict with her testimony.  Pl. Br. 19-20; Reply 9-10.  But, where, as here, the ALJ reasonably interpreted the medical record, the court declines to second-guess the ALJ's interpretation.  *See Tommasetti*, 533 F.3d at 1039. Accordingly, the ALJ found that the objective medical evidence contradicted plaintiff's symptom testimony and properly discounted it on this basis.

## B.    Working

An ALJ may rationally rely on the evidence of a plaintiff's work history to reject the alleged severity of symptom testimony.  *See* 20 C.F.R. § 416.929(c)(3) (stating that the Commissioner will consider information about a claimant's work record in assessing symptom severity); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir.1988) (finding that "[s]ubstantial

evidence indicated that the condition of [the claimant's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time").

       Here, the ALJ found:

> The claimant . . . testified to myofascial pain syndrome since childhood and reported having vertigo since her 20s, but worked for many years with these conditions.

Tr. 19 (citing Tr. 838); *see also* 256.  Plaintiff does not dispute that she worked despite her conditions.  Rather, she argues she sought various accommodations to allow her to keep working until she was "taken off work by her doctor and was on long-term disability."  Pl. Br. 18.  An ALJ may not impugn symptom testimony where the record demonstrates that the plaintiff stopped working due to her impairments.  *See Neyman-Reese v. Berryhill*, No. 3:17-CV-00436-AA, 2018 WL 1336048, at *8 (D. Or. Mar. 13, 2018) ("While an ALJ may impugn symptom testimony where a plaintiff left their job for a reason other than their impairment, here, the record is unequivocal that at the time of plaintiff's termination, she was not able to work a full-time schedule due to her impairments.").  Here, the record indicates that plaintiff sought and received accommodations due to her impairments such as part-time work, intermittent leave, and more rest periods during the workday.  Tr. 197, 206, 304-08, 309-11, 370.  The record further indicates that plaintiff stopped working because she was on disability.  Tr. 759 ("Patient is . . . on disability for vertigo.)"; *see also* Tr. 847 ("[Plaintiff h]as almost reached 2 years of continuous leave.").  Thus, the ALJ's reliance on plaintiff's ability to work as a basis to reject her subjective symptom testimony is not supported by substantial evidence in the record.

### C.    Inconsistent statements

An ALJ may consider a claimant's prior inconsistent statements concerning symptoms.

*Smolen*, 80 F.3d at 1284.

Here, the ALJ found:

> The claimant alleges being unable to use a computer fulltime, yet she indicated in
> February 2017 that she watches TV throughout the day.

Tr. 19 (citing Tr. 752); *see* Tr. 206, 258, 397, 643, 870.  However, it is not clear that plaintiff's

television-watching contradicts her statement that she is unable to use a computer full time in a

work setting.  Specifically, there is no indication in plaintiff's statements that her activity of

watching television requires a level of concentration comparable to what would be required to

perform work.[3]  *See Peck v. Comm'r Soc. Sec. Admin.,* 266 F. App'x 582, 584 (9th Cir. 2008)

(concluding the plaintiff's activities of watching television and using a computer were not

necessarily inconsistent with the alleged disability, as it was not clear that plaintiff performed

those activities in a manner transferable to a work setting).

The Commissioner argues there is another inconsistency in plaintiff's statements—that

plaintiff "told a doctor she 'would love to do part time work as she is able,' just not on a

computer[,'] despite now claiming that she is incapable of doing any office work."  Def. Br. 7

(citing Tr. 19, 815).  However, this reason was not offered by the ALJ, and "[l]ong-standing

principles of administrative law require [the court] to review the ALJ's decision based on the

reasoning and factual findings offered *by the ALJ*—not post hoc rationalizations that attempt to

---

[3] Evidence in the record indicates that plaintiff was able to tolerate about one and a half hours in
front of a computer screen while at work.  Tr. 391.  There is no evidence that plaintiff watches
television while she is having symptoms of vertigo or for more than 90 minutes at a time.  *See*
Tr. 752.  Further, plaintiff's husband stated plaintiff's "vertigo prevents . . . [watching] TV if she
is closer than several feet."  Tr. 264.

intuit what the adjudicator may have been thinking." *Bray v. Comm'r Soc. Sec. Admin.*, 554

F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added) (citation omitted).

In sum, plaintiff's television-watching is not an inconsistency that constitutes a specific,

clear and convincing reason to discount her subjective symptom testimony.

### D. Activities of Daily Living

An ALJ may discount a claimant's symptom testimony if it is inconsistent with the

claimant's activities of daily living or if the claimant's participation in everyday activities

indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639

(9th Cir. 2007). A claimant, however, need not be utterly incapacitated to receive disability

benefits, and sporadic completion of minimal activities is insufficient to support a negative

finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). The ALJ

must identify specific testimony that was inconsistent with plaintiff's activities of daily living or

how plaintiff's capacities were transferable to a work setting. *See Holohan v. Massanari*, 246

F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he

finds not to be credible and must explain what evidence undermines the testimony.") (citation

omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a

substantial portion of the day engaged in pursuits involving the performance of functions that are

transferrable to a work setting, a *specific finding* as to this fact may be sufficient.") (emphasis

added).

The ALJ found:

[Plaintiff's] daily activities are quite involved. She typically arises at 9 in the
morning and goes to bed around midnight. She bathes on a daily basis. She and
her husband share in the housekeeping chores. Her husband does most of the
grocery shopping and cooking, but she does prep cook work. She gets up in the
morning and does her stretches. She walks the dog when she feels well enough to
do so. She fixes breakfast and talks with her husband. She watches television

and goes to appointments.  She has physical therapy and massage therapy weekly.
She does her home exercise program.  During the afternoon, she does more
stretching and watches television.  She and her husband have dinner and she
watches television in the evenings.  She visits her parents and helps them as much
as she can. Her son and her husband's children come to visit once or twice per
month.  They have friends with whom they get together occasionally.  She
watches church online.  She is able to drive, use the telephone, handle money, and
mail items independently.

Tr. 20 (citing Tr. 752).  The ALJ concluded "[t]hese activities of daily living are consistent with

the above residual functional capacity assessment and are inconsistent with the disabling levels

of pain and other symptoms alleged by the claimant[,]" i.e., "[t]hey suggest a level of functioning

greater than what she has alleged in her application and testimony.  *Id.*

But the ALJ failed to identify what specific testimony he found inconsistent with

activities of daily living or explain how plaintiff's activities of daily living were transferrable to a

work setting.  *See Orn*, 495 F.3d at 639.  For instance, the ALJ did not explain how plaintiff's

"daily activities" of bathing, doing some housekeeping, doing prep cook work, and sometimes

walking the dog might contradict symptoms related to vertigo and myofascial pain or keep her

from working.

Moreover, the ALJ impermissibly used plaintiff's efforts at rehabilitation (i.e., her home

exercise program, stretching, and attendance at physical therapy, massage therapy, and medical

appointments) to discount her subjective symptom testimony.  ALJs may not on the one hand

discredit claimants for failing to seek treatment and on the other hand discredit those who

affirmatively seek treatment.  *See Molina*, 674 F.3d at 1113 ("[I]n assessing a claimant's

credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment.")*; Blake L. v. Berryhill*, 3:17-cv-01647-

YY, 2019 WL 289098, at *6 (D. Or. Jan. 4, 2019) *report and recommendation adopted* 2019 WL

281285 (D. Or. Jan. 22, 2019) ("[T]wo of the three examples that the ALJ relied upon [to

discredit plaintiff's subjective symptom testimony] involved plaintiff affirmatively seeking treatment: ALJs may not on the one hand discredit claimants for failure to seek treatment and on the other discredit those who do, based on their ability to interact with a medical provider."); *Taylor v. Astrue*, No. 08-cv-0230-AA, 2009 WL 10690945, at *8 (D. Or. Mar. 25, 2009) (citing the claimant's failure to attend medical appointments as a proper basis for discounting her testimony). Because the ALJ failed to identify specific testimony that was inconsistent with plaintiff's activities of daily living or how plaintiff's capacities were transferable to a work setting, the ALJ erred in relying on plaintiff's activities of daily living as a basis for discounting her testimony.

As the "lack of medical evidence cannot form the sole basis for discounting pain testimony," *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005), the ALJ improperly rejected plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other

factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

**A.    Kelsey Brody, M.D.**

On July 18, 2017, Dr. Brody, plaintiff's primary care provider, submitted a letter reporting that plaintiff "notes she has struggled with musculoskeletal pain since she was in her 20s, as well as periodic vertigo symptoms."  Tr. 801.  Dr. Brody opined that "[i]n 2015 there was a clear visual trigger to her vertigo and dizziness symptoms (looking at a computer screen), and she was diagnosed with convergence insufficiency[,]" and "[u]nfortunately, the treatment for this condition did not seem to help."  *Id.*

> In giving Dr. Brody's statement "little weight," the ALJ explained:
>
> She noted that treatment for [convergence insufficiency] did not seem to help, but she did not mention what treatment was tried.  Furthermore, it seems unlikely that treatment for convergence insufficiency would not work given that the claimant has only a mild case of it.

Tr. 21.  An ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings.  *See Tackett*, 180 F.3d at 1102-03 (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion).  Here, there is no medical authority that another treatment would be likely to work based on plaintiff's "mild" symptoms, and thus the ALJ's finding appears to be based on the ALJ's lay understanding of convergence insufficiency.  With no medical authority supporting this reason, the court cannot accept it as a legitimate reason for discounting Dr. Brody's opinion.

The ALJ also discredited Dr. Brody's opinion because her indication that a computer screen triggers plaintiff's vertigo and dizziness is "completely inconsistent with the consultative examiner's findings and he is an eye specialist, whereas Dr. Brody is not."  Tr. 21.  An ALJ can give more weight "to the opinions of specialists concerning matters relating to their specialty

over that of nonspecialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The consultative examiner, ophthalmologist Dr. Lubahn, conducted an "evaluation of Disability Determination in the right and left eye[s]" and observed:

> [Plaintiff] has mild convergence insuff[iciency] on my exam today that I would expect to respond to computer and near glasses with prism; she had no problems doing paperwork today or issues with testing; there were no observed problems sitting, standing, talking, listening, or handling objects; her exam seems normal to me today except for the mild convergence insuff[iciency].

Tr. 838. Dr. Lubahn opined that plaintiff's convergence insufficiency was mild, and the ALJ properly considered this factor in his analysis as to what weight to assign Dr. Brody's opinion. Any discrepancies in information provided by Dr. Brody and Dr. Lubahn are for the ALJ to resolve. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (when presented with conflicting medical opinions, it is for the ALJ to determine credibility and resolve the conflict). The ALJ chose to give greater weight to Dr. Lubahn's opinion and provided valid reasons for doing so.[4]  Tr. 21.

In sum, the ALJ gave at least one specific and legitimate reason, supported by substantial evidence, to discount Dr. Brody's medical opinion; the other invalid reasons are therefore harmless. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### B.    Alexandra Choban, O.D.

Dr. Choban noted in a July 10, 2018 statement that she diagnosed plaintiff with convergence insufficiency and prescribed eye exercises. Tr. 841. Dr. Choban stated that plaintiff reported the exercises increased her vertigo symptoms. *Id.*  Dr. Choban then prescribed prism in plaintiff's lenses, which were ultimately unsuccessful because they caused plaintiff to

---

[4] The ALJ additionally discredited Dr. Brody's opinion based on plaintiff's daily TV viewing, but he court has already rejected that rationale.

see double.  *Id.*  Dr. Choban opined that with plaintiff's "tight visual system, it is difficult to

sustain near tasks such as reading and computer work for extended periods of time[,]" and

encouraged plaintiff to "continue to work with other providers to help reduce your muscle strain"

because it "may ultimately help with your convergence challenges as well." *Id.*

     The ALJ gave Dr. Choban's opinion "some weight."  Tr. 21.  The ALJ discounted Dr.

Choban's opinion because Dr. Lubahn's "testing is consistent with only mild convergence

insufficiency, indicating [plaintiff's] symptoms are only mild and should be tolerable for the

most part."  Tr. 21.  As noted above, Dr. Lubahn conducted a motility exam, diagnosed

"convergence insufficiency," and characterized it as "mild."  Tr. 837-38; *see* Tr. 831, 832

("Good fixation and cooperation" in each eye), 838 ("[H]er exam seems normal to me today

except for the mild convergence insuff[icency].").  Inconsistency between a medical opinion and

other objective medical evidence is a specific and legitimate reason to reject medical testimony.

*Morgan*, 169 F.3d at 603.

     Plaintiff argues for a different interpretation of the medical opinions, contending "the fact

that the examining physician found she had 'mild' convergence insufficiency does not have

bearing on the degree of symptoms experienced by" her.  Pl. Br. 10.  While plaintiff "argues that

the ALJ could have come to a different conclusion," she fails to demonstrate "that the ALJ's

interpretation of the available evidence was not rational."  *Shaibi v. Berryhill*, 883 F.3d 1102,

1108 (9th Cir. 2018) (holding the court must "affirm the ALJ's findings of fact if they are

supported by substantial evidence and if the ALJ's decision was free of legal error").

     Additionally, the ALJ rejected Dr. Choban's opinion because "treatment notes indicated

the claimant was not doing her eye exercises and at that time, she said nothing about them

affecting her vertigo."  Tr. 21 (citing Tr. 762).  Inconsistencies between treatment notes and a

treating provider's opinions may provide adequate reasons to discredit the opinions of a treating physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). The record, however, reflects that plaintiff was not doing her vision exercises on the occasion cited by the ALJ in accordance with Dr. Choban's instructions. Tr. 358 ("No [vision therapy] at this time, as I feel this will only exacerbate fatigue."). Thus, this reason is not supported by substantial evidence.[5]

> The ALJ also rejected Dr. Choban's opinion because

> [Dr. Choban] mentioned that the claimant's eye muscles would not relax to allow the prism to work. Therefore, it seems Dr. Choban could work with the claimant on relaxing her eye muscles but she does not mention doing anything further for the claimant.

Tr. 21. An ALJ may consider the nature and extent of treatment provided when assigning weight to a medical opinion. 20 C.F.R. § 404.1527(c)(ii). Here, however, the record demonstrates that Dr. Choban did do something "further" for plaintiff after she complained that the prism distorted, rather than improved, her vision because she continued to work with plaintiff, including trying alternative treatments such as "Brock string" vision exercises. Tr. 918, 921, 953. Thus, this is not a valid reason to reject Dr. Choban's opinion.

Finally, the ALJ once again indicated that Dr. Choban's opinion was entitled to less weight because plaintiff watched TV. Tr. 21. This reason has already been rejected.

In sum, the ALJ provided at least one specific and legitimate reason, supported by substantial evidence, to reject Dr. Choban's opinion. Thus, any reasons the ALJ used in error are harmless. *See Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL

---

[5] The Commissioner argues that the ALJ reasonably discounted Dr. Choban's assessment because plaintiff was "not complaining of vertigo." Def. Br. 14. The court declines to address this argument because the ALJ did not entertain it. *Stout*, 454 F.3d at 1054. Even if the ALJ had set it forth, the record demonstrates that plaintiff did complain of vertigo. E.g., Tr. 771, 780, 781, 796, 815, 822, 1008.

3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.").

### C.    Donna Wicher, Ph.D.[6]

On February 10, 2017, Dr. Wicher conducted a neuropsychological examination. Tr. 750-55. Dr. Wicher noted that plaintiff reported impaired memory and concentration, fatigue, stress, and sleep disturbance; night waking and restless sleep; and problems with memory or concentration for six or seven years, which had worsened in the last year or two as her vertigo symptoms worsened. Tr. 750. As part of her mental status evaluation, Dr. Wicher noted that plaintiff had an IQ score consistent with an average range of intellectual ability, that the rest of her test results were all essentially within normal limits, and that she had no obvious deficits in cognitive functioning. Tr. 751-53. Dr. Wicher opined plaintiff had mild to moderate deficits in her ability to perform activities of daily living, mild deficits in social functioning, and mild to moderate deficits in concentration, persistence, and pace. Tr. 754.

The ALJ gave Dr. Wicher's opinion "little weight" because her diagnoses "were all just based on the claimant's report, which is not enough objective support to make a diagnosis." Tr. 22. An ALJ is entitled to reject an opinion premised on the subjective symptom testimony that has been properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). However, here, the ALJ improperly rejected plaintiff's subjective symptom testimony.

---

[6] The ALJ's decision incorrectly refers to Dr. Wicher as Wicker. Tr. 22.

Therefore, that Dr. Wicher's diagnoses were based on plaintiff reports is not a valid reason to reject them.

The ALJ next rejected Dr. Wicher's opinion because "Dr. Wic[h]er did not quantify how often the vertigo would interfere with concentration." Tr. 22. A physician's report should demonstrate how a claimant's symptoms translate into specific functional deficits that preclude certain activities. *Morgan*, 169 F.3d at 601. Dr. Wicher indicated only that plaintiff had mild to moderate deficits in concentration, persistence, and pace.[7] Tr. 754. Thus, the ALJ could reasonably have understood Dr. Wicher as failing to specify functional limits. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding doctor's descriptions of a claimant's "'limited' or 'fair'" abilities were "not useful" because they "failed to specify . . . functional limits"). Under these circumstances, the ALJ did not err in rejecting Dr. Wicher's opinion on that basis.

Additionally, the ALJ rejected Dr. Wicher's opinion because

> Dr. Wic[h]er had found the claimant was cognitively intact. She also found persistence was adequate and pace was within normal limits. Hence, the opinion that she had mild to moderate deficits in concentration, persistence and pace is given little weight.

Tr. 22. The lack of consistency between a medical opinion and other recorded observations "is a clear and convincing reason for not relying on the doctor's opinion on" that matter. *Bayliss*, 427 F.3d at 1216. Here, Dr. Wicher's examination notes state that although plaintiff reports experiencing "cognitive inefficiency, . . . her test results show that she is essentially cognitively intact[,]" and also that:

---

[7] Dr. Wicher's report did not provide definitions for mild or moderate, but because Dr. Wicher examined plaintiff at the behest of the state, she presumably used those words consistently with the Social Security Administration's definitions. *See* 20 C.F.R. part 404, subpt. P, app. 1 § 12.00 (F)(2)(b)-(c)(2017) (defining a mild limitation as "slightly limited" and a moderate limitation as "your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair").

> She complained of problems with concentration, but no gross concentration deficits were observed during the evaluation.  At the same time, it is likely that her vertigo is distracting and may interfere with concentration.  Her persistence during the evaluation was adequate and she willingly attempted and pursued all tasks presented by the examiner.  Her pace was within normal limits.

Tr. 754.; *see* Tr. 752-53 (average test results).  Thus, the ALJ reasonably found a contradiction between Dr. Wicher's observations and her opinion that "[plaintiff's] overall deficits in concentration, persistence, and pace appear to be mild to moderate."  Tr. 754.  Dr. Wicher's evaluation demonstrates a possibility for more than one rational interpretation of the evidence.  As such, the court defers to the decision of the ALJ.  *Lee v. Colvin*, 80 F. Supp. 3d 1137, 1145 (D. Or. 2015) (citing *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).

The ALJ further rejected Dr. Wicher's opinion because

> the opinion that she had mild deficits in social functioning is not supported by the claimant's report of daily activities, in which she said she spent time with her husband, visited with her parents, her children and her husband's children, and got together with friends on occasion.

Tr. 22.  Inconsistency with daily activities is a proper basis on which to discount a medical opinion.  *Ghanim*, 763 F.3d at 1162.  However, as discussed above, the ALJ erred in his analysis regarding plaintiff's activities of daily living.

In sum, the ALJ provided two specific and legitimate reasons, supported by substantial evidence, to reject Dr. Wicher's opinion; the other invalid reasons are therefore harmless.[8]  *See Carmickle*, 533 F.3d at 1162.  The ALJ did not err in discounting Dr. Wicher's opinion.

---

[8] Additionally, the ALJ rejected Dr. Wicher's opinion because the examination itself was unremarkable and because "[o]n the visual consultative examination at Exhibit 17F, there was no mention of her having any issues with vertigo during testing."  Tr. 22 (citing Tr. 831-39).  The Commissioner does not dispute that these issues were not relevant to an assessment of the limitations identified by Dr. Wicher.  Accordingly, the court does not address these reasons here.

III.    **Third Party Testimony**

Lay witness testimony regarding the severity of a claimant' s symptoms or how an

impairment affects a claimant's ability to work is competent evidence that an ALJ must take into

account.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  To reject such testimony, an

ALJ must provide "reasons that are germane to each witness."  *Rounds v. Comm' r Soc. Sec.*

*Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114 (remaining

citation omitted)).  Further, the reasons provided also must be "specific."  *Taylor v. Comm'r Soc.*

*Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115

(9th Cir. 2009)).

> The ALJ found:
>
> Function reports showed the claimant and her husband reported an exhaustive list
> of symptoms but indicated she was able to handle personal care without any
> significant problems, prepare simple meals, wash dishes, sweep, clean counters,
> do other light housework, exercise, drive, shop in stores, manage financial
> matters, play with her dog, spend time with others, attend appointments, visit her
> parents once per week, and have dinner with friends weekly.  While she claims to
> avoid TV, she reported to Dr. Wic[h]er that she watches TV throughout the day
> and her husband reported that they watch TV together.

Tr. 22 (citing Tr. 249-58, 259-66, 765, 752).

Plaintiff is correct in pointing out that the ALJ did not explicitly reject her husband's

statement.  Pl. Br. 24.  However, an ALJ need not recite magic words, e.g., "I reject," in order to

reject an opinion.  *See Magallane*, 881 F.2d at 755 ("As a reviewing court, we are not deprived

of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

It is apparent that the ALJ rejected plaintiff's husband's statements because his

observations were similar to plaintiff's subjective complaints.  Tr. 22.  The Ninth Circuit has

found that lay witness testimony that mirrors the claimant's unreliable testimony can be rejected:

"Where lay witness testimony does not describe any limitations not already described by the

claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply

equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.  Here, however, the ALJ

improperly rejected plaintiff's symptom testimony.  Therefore, on remand, the ALJ shall

readdress plaintiff's husband's statements as well.

## IV.     Erroneous RFC

Plaintiff assigns error to the ALJ's RFC formulation because it failed to include all

limitations supported by the record.  Pl. Br. 24-26.  The RFC must contemplate all medically

determinable impairments, including those that the ALJ found non-severe, and evaluate all

relevant testimony, including the opinions of medical providers and the subjective symptom

testimony set forth by the claimant.  20 C.F.R. § 404.1545; SSR 96–8p *available at* 1996 WL

374184.  In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical

testimony and translating the claimant's impairments into concrete functional limitations.

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only those limitations that are

supported by substantial evidence must be incorporated into the RFC.  *Osenbrock v. Apfel*, 240

F.3d 1157, 1163-65 (9th Cir. 2001).

Because the ALJ failed to properly credit plaintiff's subjective symptom testimony and

the statements of plaintiff's husband, the court cannot affirm that the RFC that accurately reflects

plaintiff's limitations.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)

("[A]n RFC that fails to take into account a claimant's limitations is defective.").

## V.     Remand

When a court determines the Commissioner committed harmful error in making a

decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision

"with or without remanding the cause for a rehearing."  *Treichler v. Comm'r Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand.  *Garrison*, 759 F.3d at 1020.  Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"  *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met.  As discussed above, the ALJ failed to properly evaluate plaintiff's subjective symptom testimony and plaintiff's husband's statement.

However, the second requisite is not met, as the record in this case is not fully developed.  Where the ALJ failed to properly consider plaintiff's symptom testimony and the statement by her husband, remand is the most appropriate remedy.  *See Treichler*, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").  Material conflicts remain between the testimonial evidence and the medical opinions of record.  Further proceedings would be useful to resolve those conflicts.  It is unnecessary to reach the third step of the credit-as-true inquiry.

On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (2) accept plaintiff's husband's statement or provide legally sufficient reasons for rejecting it, (3) obtain additional VE testimony regarding what work plaintiff can do, if applicable, and (4) conduct any additional proceedings as appropriate.

**ORDER**

For the reasons discussed above, the Commissioner's decision is REVERSED and

REMANDED for further proceedings consistent with this opinion.

DATED  March 25, 2021.


                                                    /s/ Youlee Yim You
                                          _____
                                          Youlee Yim You
                                          United States Magistrate Judge